1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   GERARDANGÉ, an individual, and as                No. C 05-05169 WHA
     assignee for G.A.P. INTERNATIONAL, INC.,
11   a California corporation and WORLD
     INDIGENOUS NETWORK CORP., a
12   California corporation,                          **ORDER REMANDING
                                                      CASE AND AWARDING
13                  Plaintiffs,                       ATTORNEY'S FEES AND
                                                      VACATING HEARING**
14        v.

15   ANTHONY TEMPLER; ATANDA WEB
     PRESENCE SERVICES, an unincorporated
16   entity; TOM KNIGHT, an individual; GAP
     INTERNATIONAL, INC., a Pennsylvania
17   corporation; and DOES 1–25 inclusive,

18                  Defendants.
                                                /
19   ————————————————————

20                             **INTRODUCTION**

21          In this dispute over an Internet domain name, plaintiffs Gerard Angé, G.A.P.

22   International, Inc. ("Gap California") and World Indigenous Network Corp. move to remand

23   this matter on grounds that this Court lacks removal jurisdiction under 28 U.S.C. 1441(b).

24   Plaintiffs also move for attorney's fees under 28 U.S.C. 1447(c).  Finding that no federal

25   question was presented in plaintiffs' complaint, this order **GRANTS** plaintiffs' motion to remand

26   and **GRANTS** plaintiffs' request for attorney's fees.

27

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1

**STATEMENT**

2      On November 7, 2005, plaintiff Angé in his individual capacity and as assignee for

3  plaintiffs Gap California and World Indigenous Network Corp. filed a complaint in the Superior

4  Court of California for the County of Alameda against defendants Anthony Templer, Atanda

5  Web Presence Services, Tom Knight, Gap International, Inc. ("Gap Pennsylvania") and Jon

6  Greenawalt.  Plaintiffs alleged eleven causes of action for:  intentional misrepresentation,

7  concealment, false promise, conversion, inducing breach of contract, intentional interference

8  with contractual relations, intentional and negligent interference with prospective economic

9  relations, conspiracy, accounting and declaratory relief.  Plaintiffs have since voluntarily

10  dismissed his claims against Greenawalt.  No party in this action is related to the GAP clothing

11  chain.

12      Plaintiffs alleged in the complaint that they owned the domain name

13  "gapinternational.com."  Plaintiffs operated a website at that domain name to promote their

14  television network, World Indigenous Television Network ("WIN-TV"), which broadcast

15  programs with content relevant to indigenous people.  Defendant Templer provided the hosting

16  services for the domain name.  According to plaintiffs, Templer conspired with Gap

17  Pennsylvania, a consulting firm providing business management, and Tom Knight to transfer

18  ownership and control of the domain name to Gap Pennsylvania without plaintiffs' knowledge.

19  Plaintiffs alleged that they were on the verge of obtaining fifty million dollars in funding for

20  WIN-TV.  As a purported result of the transfer of his website to another entity, the funding fell

21  through.

22      On December 13, 2005, Gap Pennsylvania removed this action on grounds of federal-

23  question jurisdiction.  The remaining defendants subsequently joined in the removal.

24  Defendants maintained that federal-question jurisdiction existed here because it stated a claim

25  for trademark infringement under the Lanham Act, as well as a claim under the Lanham Act's

26  anti-cybersquatting provisions.  15 U.S.C. 1125(a), 1125(d).  Plaintiffs now move to remand

27  this action, asserting that this is not a federal-law action for infringement or cybersquatting, but

28  a state-law action for conversion of intangible property.

**United States District Court**
For the Northern District of California

**ANALYSIS**

1.      **REMAND.**

Removal under 28 U.S.C. 1441(b) is permitted for actions involving a federal question over which the district court could have exercised original jurisdiction pursuant to 28 U.S.C. 1331.  The removing party bears the burden of establishing that removal is proper.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1990).  The removal statutes are strictly construed such that any doubts are resolved in favor of remand.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Of course, where federal questions are involved a defendant can remove an action that could have been brought in federal district court originally.  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, ___ U.S. ___, 125 S.Ct. 2363, 2366 (2005).  Even where a plaintiff frames his or her complaint in terms of state law, "federal question jurisdiction will lie over state-law claims that implicate significant federal issues."  Such a claim, however, may only be removed to federal court if it meets certain conditions:  (1) it must raise a stated federal legal issue, (2) determination of the federal issue must be necessary to resolution of the claim, (3) the federal issue must be actually disputed, (4) the federal issue must be substantial, and (5) the federal court must be able to entertain the claim "without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, ___ U.S. ___, 125 S.Ct. 2363, 2366–68 (2005).  If only one of several state claims satisfies the requirements for removal on federal-question grounds, then any other purely state claims in the same complaint may also be determined by the federal court under its supplemental jurisdiction.  28 U.S.C. 1441(c).  This order now analyzes whether the *Grable* requirements are met here.

On the face of plaintiffs' complaint, all eleven claims are based on state-law.  Defendants content, however, that plaintiffs' state-law claims implicate the Lanham Act, which governs federal trademark law.  According to defendants, plaintiffs have clothed their claims for infringement and cybersquatting in state-law dress.  This order finds defendants' arguments unpersuasive.

Under the Lanham Act, infringement entails that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or
> > as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a). At its core, a trademark-infringement claim requires a showing that defendant is "using a mark confusingly similar to a valid, protectable trademark." *Brookfield Communications, Inc. v. W. Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

Nothing in plaintiffs' complaint suggests that confusion between the parties' marks will be at issue in this dispute. Plaintiffs did not allege that web browsers visiting gapinternational.com would confuse defendant's business-consulting products with plaintiffs' television programs pertaining to indigenous people. On the contrary, plaintiffs articulated that these browsers were looking for information about WIN-TV and met with inapposite content. As a result, according to plaintiffs, the network lost valuable funding.

The ultimate issue will be whether defendants improperly converted and conspired to convert plaintiffs' website into Gap Pennsylvania's property. The parties argue at length as to whether conversion of a domain name is a state-law claim. Our circuit recently made clear that it is. In *Kremen v. Cohen*, 337 F.3d 1024, 1029–36 (9th Cir. 2003), the court applied California law to determine whether a domain name was covered by the tort of conversion, and if so, what showing was required. The court concluded that "Kremen's domain name is protected by California conversion law, even on the grudging reading we have given it." *Id.* at 1035.

United States District Court
For the Northern District of California

4

United States District Court

For the Northern District of California

1    Plaintiffs' relief is provided by California law.  Defendant simply does not satisfy any of the

2    *Grable* factors.

3        Likewise, defendant's argument that plaintiffs' claims necessarily implicate federal anti-

4    cybersquatting regulations is unpersuasive.  As our circuit recently explained:

5            Cybersquatting occurs when a person other than the trademark
             holder registers the domain name of a well known trademark and
6            then attempts to profit from this by either ransoming the domain
             name back to the trademark holder or by using the domain name
7            to divert business from the trademark holder to the domain name
             holder.

8    *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (internal citation

9    omitted).

10       Plaintiffs in no way claimed that defendants were cybersquatting.  According to

11   plaintiffs, WIN-TV already was posting material on gapinternational.com.  Defendants then

12   allegedly converted the domain name into one for Gap Pennsylvania's use.  Plaintiffs have not

13   alleged that Gap Pennsylvania was operating a website under the domain name

14   gapinternational.com to divert customers from WIN-TV.  As noted above, plaintiffs' television

15   network and defendant's consulting firm were not appealing to the same customer base.  Again,

16   defendant cannot satisfy the *Grable* factors.

17       At bottom, defendant's arguments suffer from an attempt to translate every issue relating

18   to the Internet into a federal question.  The Internet is not a talisman bestowing federal

19   jurisdiction.  There remains a place for state courts to determine the rights and responsibilities

20   in the constantly evolving world of Internet law.  Congress has not indicated an intent to strip

21   state courts of this role.  While the Lanham Act bestows federal jurisdiction, it does so only

22   over claims that explicitly fall under its scope.

23       This is in contrast to the securities context where Congress passed the Securities

24   Litigation Uniform Standards Act of 1998 ("SLUSA").  Congress enacted SLUSA "because

25   heightened pleading requirements in federal securities cases caused a pilgrimage of securities

26   claims to state courts, thus circumventing congressional reforms designed to restrict federal

27   securities claims." *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1128 (9th Cir. 2002).  The

28

1   effect of SLUSA is to push certain state-law claims relating to securities into federal court so as

2   to satisfy the federal standards.  There is no similar statute for the Internet.

3       Defendants' request, in the alternative, for allowance to amend their removal petition is

4   **DENIED**.  Plaintiffs' claims simply do not implicate the Lanham Act or federal law.  Defendants

5   have not indicated any other theory of jurisdiction that would justify further delay in

6   adjudicating this action.

7       This order does not rule on defendants' request for judicial notice.  None of the

8   documents proffered by defendants are relevant to a determination whether removal was proper.

9       **2.    ATTORNEY'S FEES.**

10      Plaintiffs also move for attorney's fees and costs under 28 U.S.C. 1447(c).  That section

11  provides that "[a]n order remanding the case may require payment of just costs and any actual

12  expenses, including attorney fees, incurred as a result of the removal."  A court may make "an

13  award of fees when a defendant's removal, while 'fairly supportable,' was wrong as a matter of

14  law." *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 n. 6 (9th Cir. 2000).

15  The intent or bad faith of defendant are irrelevant to the court's determination.  *Ibid.*

16      This order finds that fees are warranted here.  Defendants incorrectly tried to fit

17  plaintiffs' state-law claims into the framework of the Lanham Act.  As articulated above,

18  defendants completely misstated the gravamen of plaintiffs' complaint—conversion of

19  intangible property.  Defendants also erred in arguing that conversion of a domain name was

20  not a state-law claim.

21      Plaintiffs' demand for $2,600 in fees is reasonable under the circumstances and based on

22  competitive billing rates.  Defendants and their counsel are responsible for paying this sum to

23  plaintiffs.

24

25

26

27

28

**United States District Court**
For the Northern District of California

**CONCLUSION**

Plaintiffs' motion to remand is **GRANTED**.  Defendants and their counsel shall pay plaintiffs a total of **$2,600** to compensate for the fees and costs associated with bringing this motion.  Finding further argument unnecessary, hearing on this motion is **VACATED**.


**IT IS SO ORDERED.**


Dated:  February 21, 2006

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California